716 P.2d 1349

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Delbert Lee CRAWFORD,
Defendant-Appellant.**

**No. 15791.**

Court of Appeals of Idaho.

March 21, 1986.

Virginia R. DeMeyer, DeMeyer & De-Meyer, Middleton, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Michael Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Delbert Crawford was convicted by a jury of aggravated assault for allegedly beating his wife with the leg of a chair. Crawford was sentenced to a determinate five-year prison term. On appeal, Crawford raises three issues, all relating to the admission of evidence during his trial. First, Crawford asserts that the trial judge erred by allowing testimony of a motel manager about the condition of the room where the assault took place, urging the testimony was the product of an illegal search. Next, Crawford contends the trial judge erred when he allowed a physician who treated the victim to testify about statements made by the victim identifying her husband as the assailant. Third, Crawford argues that the judge erred when he allowed the physician to invade the province of the jury by expressing a conclusion as to the extent of the victim's injuries. We affirm.

Delbert and Linda Crawford were staying at the Sportsman Motel in Nampa, Idaho. About 10:30 on the evening of May 21, 1984, Linda Crawford, bleeding from multiple lacerations and in a state of hysteria, ran into the motel managers' apartment and locked the door. She claimed that her husband, Delbert, was trying to kill her. The motel managers, Sharon and James Lowell, helped Mrs. Crawford with her injuries and called the police. Delbert Crawford left the motel in his car. When the police arrived, Linda Crawford told them that her husband had beaten her with the leg of a chair. The police pursued Delbert but could not find him. During the investigation of the assault, one of the police officers who had remained at the motel asked Mrs. Lowell to get some clothes from the Crawfords' motel room for Mrs. Crawford, who was then dressed in only a tee-shirt and panties and was to be taken to the hospital by paramedics. The officer and Mrs. Lowell went to the Crawfords' room where Mrs. Lowell got clothes for Mrs. Crawford. Later, the police officer and another officer returned to the room where they photographed the scene and

seized the chair leg which had allegedly been used by Delbert to beat his wife.

Apparently, the police entered the Crawfords' motel room three times. The first time was immediately after the police arrived at the motel. One of the officers and Mr. Lowell at that time went to the Crawfords' room, and the officer simply looked around the room. The second entry was when the officer and Mrs. Lowell went to the room and retrieved the clothing for Mrs. Crawford. The third entry occurred when the officers took pictures of the room and seized the chair leg alleged to have been the weapon. The officers did not have a search warrant during any of these entries. Responding to a pretrial motion to suppress the evidence discovered in the room, the trial judge ruled that the officers' testimony about any evidence discovered during the searches must be excluded. The judge reasoned that there were no exigent circumstances that would have invoked an exception to the requirement for a search warrant. However, the judge did allow Mrs. Lowell to testify concerning the disarray and blood she saw in the room when she went in to get clothes for Mrs. Crawford. The judge ruled that Mrs. Lowell was not acting as an agent of the police when she retrieved the clothing, but rather was responding to the needs of Mrs. Crawford. The judge concluded that Mrs. Lowell acted with the implied consent of Mrs. Crawford, and that Mrs. Lowell was not sent into the room for any purpose other than getting the clothes.

At trial, Mrs. Crawford refused to testify against her husband. Instead she claimed that she had injured herself in a fall down some steps, and that her husband had not beaten her with the chair leg. However, the physician who treated Mrs. Crawford at the hospital the evening of the alleged assault testified that she had told him it was her husband who had beaten her. The judge ruled that such testimony was admissible because it was relevant to the doctor's

determination of whether the injuries he observed were consistent with the history given by Mrs. Crawford. The physician also was allowed to testify, over objection, that Mrs. Crawford's injuries were severe enough that they could have resulted in "great bodily injury," one of the elements of the aggravated assault charge against Crawford.[1] The judge ruled that the doctor's opinion about the severity of the injuries was admissible as testimony concerning a medical fact.

## I

Crawford argues that the motel manager was acting as an agent of the police when she went into the room to get clothing for Mrs. Crawford. Because the police did not have a warrant to search, Crawford argues, Mrs. Lowell's entry was illegal and her subsequent testimony should not have been allowed. We conclude that permitting Mrs. Lowell's testimony was proper.

The fourth amendment protects citizens against unreasonable government searches which intrude upon a person's reasonable expectations of privacy. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The fourth amendment protections are applicable to the state through the fourteenth amendment. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). However, a search, wrongful or not, by a private party does not invoke fourth amendment protections. *United States v. Walther*, 652 F.2d 788 (9th Cir.1981). Thus, whether Mrs. Lowell was an agent of the government is determinative of the need for fourth amendment analysis. We conclude, as did the trial judge, that she was not an agent of the government.

The court in *Walther* pointed out that there is "a 'gray area' between the extremes of overt governmental participation in a search and the complete absence of such participation." *Id.*, 652 F.2d

---

1. I.C. § 18–907, which defines aggravated battery, uses the words "great bodily harm." For purposes of this case, we conclude that the word "injury" denotes the same meaning as the word "harm."

at 791. The court reasoned that these "gray area" cases can best be resolved on a case-by-case basis, consistently applying certain principles. *Id.* One of these principles is that *de minimus* or incidental contacts between the police and private citizens will not invoke fourth amendment scrutiny. *Id.* The government must be a direct participant or an indirect encourager of the private citizen's actions in order to bring those actions within the purview of the fourth amendment. Another principle is that where officers do not take an active role in encouraging or assisting the private search, fourth amendment protections are not brought into play if the private citizen had a "legitimate independent motivation for conducting the search." *Id.,* 652 F.2d at 792. The *Walther* court concluded that two of the critical factors under such an analysis are: (1) government knowledge and acquiescence, and (2) the private party's intent in making the search. *Id.*

■ The reasoning in *Walther* is appropriate to the present case. Here there were *de minimus* contacts between the police and Mrs. Lowell. The record shows that the officer simply asked Mrs. Lowell to get some clothes for Mrs. Crawford. Although the officer accompanied Mrs. Lowell, there is no evidence that he encouraged or directed her to "search" the motel room. His actions in accompanying her were reasonable since the defendant had not been arrested and his location was unknown. There were apparently no ulterior motives involved in the entry to get the clothes and no evidence that any kind of "search" occurred. Additionally, Mrs. Lowell had a legitimate independent motivation for her actions. She testified that she went to get the clothing for Mrs. Crawford, not only because the officer asked her to, but because Mrs. Crawford was scantily clad and needed the clothes for her trip to the hospital. There is no evidence that Mrs. Lowell had any intent to collect evidence or to search the motel room as a witting or unwitting agent of the government.

The record clearly shows that Mrs. Lowell's sole intent was simply to get clothes for Mrs. Crawford. We hold therefore that there was insufficient evidence to show anything more than *de minimis* government involvement and therefore, no infringement of fourth amendment rights. Accordingly, Mrs. Lowell's testimony was properly admissible. The trial judge's refusal to permit any police testimony as to what the officers observed was a sufficient remedy for government's involvement.

## II

Next, Crawford asserts the physician who treated Mrs. Crawford should not have been allowed to testify about her statements identifying her husband as the assailant. Crawford urges that the doctor's testimony was inadmissible as hearsay evidence. As noted, the trial judge allowed the testimony as relevant to the doctor's diagnosis of injuries. The state contends that Crawford did not object to the testimony in question and thereby failed to preserve the issue for appeal. *State v. Sharp,* 101 Idaho 498, 616 P.2d 1034 (1980). Also, the state points out that prior witnesses had already testified as to Mrs. Crawford's statements identifying her husband as the assailant.

■ The record reflects that, prior to the doctor's testimony, Crawford sought a ruling from the court limiting the extent of the doctor's testimony. The transcript is less than clear about the scope of the judge's ruling concerning that proposed testimony. The judge did refuse to allow testimony about previously inflicted injuries, but whether testimony by the doctor regarding the identity of the assailant was also to be excluded was not explicitly stated. We question whether the identity of the assailant was necessary for the doctor's diagnosis of the injuries. However, we do not have to base our conclusion as to this issue on the relevance of that testimony. The record reflects that, prior to the doctor's testimony, both Mr. and Mrs. Lowell had already testified as to Mrs. Crawford's statements incriminating her hus-

band. Therefore, the doctor's testimony on this point was simply cumulative to evidence already introduced without objection. Under these circumstances, we hold that any error in allowing the doctor's hearsay testimony was harmless and does not justify reversal of the conviction.

### III

Finally, Crawford contends the judge should not have permitted the physician to testify that the injuries to Mrs. Crawford could have resulted in "serious bodily injury." Crawford asserts that this was a factual determination for the jury. The trial judge concluded that it was a medical fact suitable for the doctor's opinion.

Admissibility of expert testimony is discretionary with the trial court. *State v. Griffiths*, 101 Idaho 163, 610 P.2d 522 (1980). Expert testimony generally is limited to matters that require special skills and knowledge such as information beyond the understanding of ordinary untrained citizens. *Id.* Absent an abuse of discretion by the trial judge, a decision to admit expert testimony will not be disturbed on appeal. *Id.*

Some courts have determined that the question of what constitutes "great bodily harm" is a question of fact. *People v. Dowdy*, 21 Ill.App.3d 821, 316 N.E.2d 33 (1974); *Houston v. State*, 168 Ind.App. 189, N.E.2d 684 (1976). However, experts may give opinions on subjects even though the opinion itself may be on an ultimate fact to be decided by the trier of fact. I.R.E. 704. *See also* G. BELL, HANDBOOK OF EVIDENCE FOR THE IDAHO LAWYER 69 (1972); REPORT OF IDAHO STATE BAR EVIDENCE COMMITTEE, IDAHO RULES OF EVIDENCE, 704 comments (1985). The jury may then believe the testimony or reject it as unreliable. *State v. Kellogg*, 100 Idaho 483, 600 P.2d 787 (1979); *State v. Myers*, 94 Idaho 570, 494 P.2d 574 (1972). Testimony by the doctor, in addition to his opinion, overwhelmingly established that great bodily injury did occur. Also, the jury was instructed by the judge that it should consider the nature and extent of any injuries in deciding whether those injuries were likely to produce great bodily harm. Even though the doctor was allowed to give his opinion as to whether "great bodily injury" could have resulted from Mrs. Crawford's injuries, we conclude that there was no abuse of discretion that would warrant a reversal of the conviction.

No reversible error having been shown, the judgment of conviction is affirmed.

BURNETT, J., and McFADDEN, J. Pro Tem., concur.