813 P.2d 857

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James Deveral WALTERS,
Defendant–Appellant.**

No. 16630, 17249.[1]

Supreme Court of Idaho.

Jan. 24, 1990.

Rehearing Granted March 27, 1991.

On Rehearing July 23, 1991.

1. Consolidated with S.Ct. No. 17249, a post-conviction relief proceeding filed by Walters.

Tway & Rosenheim, Boise, for defendant-appellant.[2] Gustav A. Rosenheim and William J. Tway, argued.

Jim Jones, Atty. Gen., and Michael A. Henderson (argued), Deputy Atty. Gen., Boise, for plaintiff-respondent.

BISTLINE, Justice.

Walters was convicted of two felonies arising out of one incident, arson and destruction of insured property. On appeal he argues: (1) Reversible error occurred when the state's arson investigator testified to his opinion that Walters started the fire; and (2) that trial counsel did not provide Walters with effective assistance in that counsel allowed the opinion to be given without any challenge.

## I.

On the morning of November 19, 1984, a fire occurred at the house occupied by Walters and Allen Tarter. Tarter was also the owner of the house; Walters paid rent to live there. A neighbor spotted the fire, telephoned the fire department, and brought the fire under control with a garden hose until the fire department arrived. The neighbor testified that he saw Walters driving away from the house only three minutes before the neighbor spotted the fire.

At trial Donald Dillard, a fire investigator with the State Fire Marshal's office testified for the prosecution, and was the State's first and most dramatic witness:

A   Keeping all this in mind, plus the fact that it was evidence that it was a hot, fast fire as opposed to a small or as opposed to a slow, smoldering fire, yes,

the evidence suggests to me that it was deliberately set. A case of arson.

Q   And do you have an opinion as to who started that fire?

A   I do.

Q   And what is your opinion as to who started that fire?

A   *I believe it was the defendant, Mr. Walters.*

Q   And upon what do you base that?

A   During the course of my interview with Mr. Walters, he readily admits that he was the last one on the premises. I also established, through Mr. Dallman, Cecil Dallman [the neighbor], who put out the fire, that he in fact saw the defendant drive by; came right past in his Bronco. And within five minutes of that sighting, noticed flames in the house, flames up the window; that's not going to happen.

Tr., Vol I, p. 49, lines 7–25 (emphasis added). Walter's counsel did not object to these questions when they were asked, nor did he move that the answers to these questions be stricken.

After sentencing Walters appealed. Before the appeal was heard, he also filed a petition for post-conviction relief. The petition was denied and all issues preserved below in both proceedings were consolidated for presentation on appeal.

## II.

■   Walters argues that the opinion testimony of the arson investigator deprived him of his right to a jury trial because thereby it was the investigator, rather than the jury, who first made the determination of Walters' guilt. At the post-conviction hearing the trial court acknowledged that the contested testimony would have been excluded if timely objection had been made, and the state in its brief has conceded that the testimony "would probably have been excludable." (Brief of resp. at 9). Clearly this testimony was inadmissible because of its obvious usurpation of the jury function, and its highly prejudicial effect upon the

**2.**   Walters's trial counsel was other than counsel who appeared on his behalf at sentencing and

all subsequent proceedings.

jury in reaching a verdict. We agree with Walters that the testimony constituted an unwarranted invasion into the province of the jury, and that Walters' constitutional right to a jury trial was therefore violated. The witness Dillard was testifying to the ultimate fact which the jury alone was impanelled to try, namely, whether Walters was guilty as charged. As mentioned earlier the opinion testimony was admitted without challenge. This constituted error, but the question remains whether that error necessitates that Walters be allowed a new trial.

### III.

■ The territorial legislature of Idaho passed legislation as early as 1864 concerning the effect of error on a criminal conviction. That legislation has survived to this day, codified as I.C. § 19-3702. It provides, **"Immaterial errors disregarded.**— Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right." Section 19-3702 has been cited many times for the proposition that "non-prejudicial error does not constitute grounds for reversal." *State v. McNary,* 100 Idaho 244, 596 P.2d 417 (1979).

Two unanimous opinions, *State v. Haggard,* 94 Idaho 249, 486 P.2d 260 (1971), and *State v. Cariaga,* 95 Idaho 900, 523 P.2d 32 (1974), committed this Court to the *doctrine of fundamental error* in circumstances where trial counsel failed to register an objection. *Haggard* was the first in point of time. In *Cariaga* the Court took the opportunity to again consider its *Haggard* holding. In addition to the failure of the accused to have voiced an objection in trial court proceedings in *Cariaga,* there had been no assignment of error in the appellant's brief. In response to the state's argument that the failure to object to a defective complaint waived the due process objection the Court reasoned:

> [W]e feel the issue of whether or not appellant has waived any objections she might have is controlled by our decision in *State v. Haggard,* 94 Idaho 249, 486 P.2d 260 (1971), where we held that where a fundamental error has been committed in a criminal trial, this Court may consider it even though no objection was made in the trial court.
>
> The appellant contends that he was denied due process and deprived of a fair trial because the prosecuting attorney elicited at trial that Haggard did not tell the judge of his alibi at the preliminary hearing. Appellant maintains that this information should not have been made available for the jury's consideration and by so doing the lower court deprived him of a fair trial. Counsel for defendant failed to raise an objection to the cross-examination at the time of trial and ordinarily this Court would not consider this assignment of error. However the obligation of the state to see that defendant receive a fair trial is primary and fundamental. [Citing cases] In case of fundamental error in a criminal case the Supreme Court may consider the same even though no objection had been made at time of trial. 94 Idaho at 251, 486 P.2d at 262. *Because the variance between the complaint and conviction denies the appellant due process of law,* she has not waived her right to object even though no objection has been previously made. Neither can this Court ignore the issue because it has not been assigned as error in the original briefs. It was assigned as error in the supplemental brief ordered filed by the Court during oral argument.

*State v. Cariaga,* 95 Idaho 900, 903-04, 523 P.2d 32, 35-36 (1974) (emphasis added).

Chief Justice Bakes was on the Court when *Cariaga* was decided in 1974, and he readily embraced the *Haggard* doctrine of fundamental error. In the following year, 1975, when *State v. Wright,* 97 Idaho 229, 542 P.2d 63, was before the Court on appeal, Justice Shepard wrote the non-unanimous majority opinion. He dealt with the alleged errors as follows:

This is an appeal from a conviction of robbery after trial and a jury verdict of guilty. The questions presented involve the failure of the court reporter to record the closing argument of counsel and the testimony of the arresting officer that the appellant refused to divulge his name at the time of his arrest.[3] While we find error in the failure to record all proceedings, appellant has not demonstrated any prejudice resulting therefrom. We affirm.

Appellant Willie Wright asserts that prejudicial error is found in the testimony of the arresting officer that at the time of his arrest appellant refused to divulge his name and requested an attorney (albeit said testimony came in without objection); that such testimony 'was again emphasized' to the jury during the prosecuting attorney's closing argument (again absent any objection); and because the closing argument of counsel was not recorded.

. . . .

Appellant here argues that the failure to record closing arguments has denied him the protections of the due process clauses of the constitutions of the United States and the State of Idaho, is prejudicial and resulted in lack of fundamental fairness reaching constitutional dimensions. We do not agree that the failure to record closing argument is *per se* a denial of due process. Error in the abstract does not necessarily rise to the level of constitutional dimensions unless and until a defendant properly presents specific prejudice resulting from such error.

. . . .

Here, appellant contends prejudicial error was committed in references to Wright's refusal to give his name at the time of arrest and his request for an attorney. Those references were contained in Officer Rossiter's testimony in which he described the circumstances surrounding apprehension and arrest of appellant. No objection was taken there-

to. It is a long established principle of this Court that, with limited exception, error at trial must be the subject of proper objection to merit review upon appeal. [Citing cases]

We have recognized an exception to that principle in *State v. Haggard*, 94 Idaho 249, 486 P.2d 260 (1971) in a situation involving 'fundamental error.' We do not agree that the instant case falls within that exception.

. . . .

Even assuming that the error alleged of non-reporting is of constitutional dimensions there is no showing of resulting prejudice. Not all constitutional error is harmful or prejudicial. *Chapman v. California* [386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)], *supra*. Although the U.S. Supreme Court has held that the Fifth Amendment precludes comment or argument concerning a defendant's silence in a criminal trial, *Stewart v. United States*, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961); *Griffin v. California* [380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)], *supra*; and *Chapman v. California*, *supra*, that rule is interpreted in the light of reason.

> '. . . the test is whether the language used was manifestly intended or was of such character that the jury would *naturally and necessarily* take it to be a comment on the failure of the accused to testify.' *Knowles v. United States*, 224 F.2d 168 (10th Cir.1955). See also *United States v. Fay*, 349 F.2d 957 (2nd Cir.1965); *United States v. Wright*, 309 F.2d 735 (7th Cir.1962).

*State v. Wright*, 97 Idaho 229, 230–33, 542 P.2d 63, 64–67 (1975).

Finally, after conceding an error had occurred and declaring that there was no showing of prejudice, the majority opinion dealt with the unassailable fact that the defendant was unable to show prejudice because of the trial court's error in not

---

**3.** The arresting officers advised defendant of his *Miranda* rights and asked his name, which de-    fendant refused to give.

requiring the court reporter to report closing argument:

> If, as argued by appellant, prejudicial error lies hidden in the unrecorded portions of counsel's closing argument, it is nevertheless not before this Court. Rule 37 of this Court permits augmentation of the trial court record upon motion and the granting of such motions has been liberally permitted by this Court. Here, no such augmentation of the record was requested nor have the briefs or oral argument described the precise nature of the alleged objectionable conduct or comment. Rather, this Court is asked to presume fundamental error from a silent record. The instant case is therefore distinguishable from *Ebersole* and *Martinez* and *Fowler v. United States,* 310 F.2d 66 (5th Cir.1962).

*State v. Wright,* 97 Idaho at 233, 542 P.2d at 67. However, the *Wright* opinion failed to mention that both in *Ebersole* and in *Martinez* the convictions were *reversed* for the failure of non-reporting because such failure made it impossible for the defendant to produce a transcript which in *Ebersole* would have shown the prosecutor's use of the defendant's refusal to identify himself, and which in *Martinez* precluded the defendant from showing that he had not waived his right to counsel. "When a person ... deprived, through no fault of his own, of the opportunity of affirmatively establishing the facts to demonstrate the legality or illegality of his incarceration, *a fundamental lack of fairness in the judicial process is established." Martinez v. State,* 92 Idaho 148, 149–50, 438 P.2d 893, 894–95 (1968) (emphasis added).

*Martinez* and *Ebersole* demonstrate that the doctrine of *fundamental fairness,* or as conversely stated, *fundamental error,* was operating in Idaho even prior to *Haggard.* Justice Bakes, joined by Chief Justice McQuade, clearly recognized this when he dissented in *Wright:*

> I cannot agree with the majority that (1) the police officer's testimony that after warning the defendant of his constitutional right to remain silent the defendant refused to give the officer his name, in conjunction with (2) possible reference

to this testimony by the prosecuting attorney in his closing argument as evidence of the defendant's guilt, does not constitute fundamental or constitutional error which entitles the defendant to a new trial.

The Supreme Court of the United States, in the landmark decision of *Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), said the following regarding reference to an arrestee's exercise of his Fifth Amendment right to remain silent as evidence of his guilt:

> In accord with out decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation. 384 U.S. at 468, [footnote 37], 86 S.Ct. at 1625, footnote 37.

Thus, I think it is clear that allowing into evidence the police officer's response that the appellant refused to tell the officer his name after he had been given the *Miranda* warnings which advised him that he had a right to remain silent was in violation of the appellant's constitutional rights; reference to this silence during the prosecutor's closing argument would necessarily compound this violation of the appellant's rights.

. . . .

With regard to the alleged prejudicial comment of the prosecutor in his closing argument, the majority states, *ante* at page 67, that:

> If, as argued by appellant, prejudicial error lies hidden in the unrecorded portions of counsel's closing argument, it is nevertheless not before this Court. Rule 37 of this Court permits augmentation of the trial court record upon motion and the granting of such motions has been liberally permitted by this Court. Here, no such augmentation of the record was requested nor have the briefs or oral argument described the precise nature of the al-

leged objectionable conduct or comment.

The appellant here argued that the prosecuting attorney made improper references during his closing argument to the fact that the appellant exercised his constitutional right to remain silent. The prosecuting attorney's closing argument was never recorded by the court reporter, so of course the defendant cannot augment the record with that argument. *The majority has found that failure to record to be error.* Yet the majority cites the appellant's failure to augment the record to show the error, which of course it is impossible for the appellant to do, as one of the reasons why it will not consider whether such a reference would be prejudicial error. Furthermore, the majority says that the nature of the objectionable comment was not described in the briefs. I do not agree with that statement. On page 3 of his brief the appellant states the following:

> Appellant's reliance upon his Fifth Amendment rights was again emphasized in the state's closing argument without objection.

This surely apprises the Court of 'the precise nature of the alleged objectionable conduct or comment.' Thus, I can accept neither of the majority's rationales for concluding that comment during the closing argument would not itself constitute prejudicial error.

When this Court is unable to review the proceedings of the lower court because, in violation of the statutes of this state, the record of those proceedings was not properly taken and preserved, and due to the record's deficiencies we are unable to determine wither a defendant's judgment of conviction has been obtained in a proceeding tainted with fundamental error, then we must apply the rule of *Ebersole v. State,* 91 Idaho 630, 428 P.2d 947 (1967), where we stated:

> Appellant's dilemma was not of his own making. The statutory provisions requiring the recording of oral proceedings by the court reporter ... are fairly designed ... to protect a defendant from the very situation now before this Court.
>
> . . . .
>
> When there is such a breakdown in the application of established procedures, as is reflected by this record, which necessitated resort to the parol evidence of court officials and of the appellant himself to establish what took place in a court of record, there is such a lack of fundamental fairness and deviation from established rules of procedure as to necessitate the conclusion that appellant has not been afforded the protection of the due process clauses of the Constitutions of the United States and this State. 91 Idaho at 636, 428 P.2d at 953.

*Ebersole's* requirements are clear—when no record of certain proceedings before the district court is available, but had a record been available it might have substantiated the defendant's allegation that there was prejudicial error in those proceedings, a judgment of conviction based upon proceedings cannot be sustained; otherwise, the defendant has been denied due process in violation of the Constitution of the United States and of the State of Idaho.

In essence the rule of *Ebersole* is that in this case we must reach our decision as if the record shows, as the appellant alleges in his brief, that the prosecuting attorney in his closing argument referred to the appellant's exercise of his Fifth Amendment right to remain silent as evidence of his guilt. To do otherwise would deny him due process of law. In this circumstance, I would adopt the holding of the Tenth Circuit in *United States v. Nolan,* 416 F.2d 588 (1969), which said the following in connection with this matter:

> We see no difference in principle in the exercise by the defendant of his constitutional right not to testify and his constitutional right to remain silent and refrain from making either an inculpatory or exculpatory statement to the officers when taken into custody for a federal offense. In either case,

the comment [by the prosecutor that the defendant's failure to make exculpatory statements to the arresting officer was evidence of his guilt] would greatly impair such privilege and penalize the exercise thereof. Apposite is the language of the Supreme Court in *Griffin v. California,* 380 U.S. 609, at page 614, 85 S.Ct. 1229, at page 1233 [14 L.Ed.2d 106]: "It is a penalty imposed ... for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly."

We think the error committed was so plain, fundamental, and serious that we should consider it, although timely objection was not made thereto in the trial court. 416 F.2d at 594 (footnote omitted).

The state courts of Colorado and Kansas have reached similar decisions. *People v. Mingo,* 509 P.2d 800, 181 Colo. 390 (1973); *State v. Ritson,* 210 Kan. 760, 504 P.2d 605 (1972). I believe these to be the better reasoned cases and would hold that the admission of the testimony in question and the prosecutor's comment upon the testimony was fundamental error. Therefore, I would vacate the judgment of conviction and remand for a new trial.

*State v. Wright,* 97 Idaho at 234–36, 542 P.2d at 68–70 (emphasis added).

The *Wright* case was closely followed by another case in which Justice Bakes, joined by Justice McQuade, was disturbed by a majority opinion which again declined to follow the precedent established in *Haggard.* That case, *State v. Swenor,* 96 Idaho 327, 528 P.2d 671 (1974), bears a similarity to this *Walters* case in that the defendant was charged with first degree arson. The state placed on the stand a police officer who, according to the majority opinion:

[T]estified that at the time the defendant was arrested, Larry Swenor, the defendant's husband stated to her, 'See, I told you they would catch you for what you did.' This statement was made in the defendant's presence and no reply was made to it by the defendant. Under the

circumstances this statement would be corroborative evidence.

96 Idaho at 330, 528 P.2d at 674.

The majority agreed that defendant's counsel did make a timely objection to the admission of the husband's statement and noted that although the objection was overruled, on the appeal "no assignment of error is predicated on this point." 96 Idaho at 330, 528 P.2d at 674. Justice Bakes correctly pointed out in his dissenting opinion that the testimony was clearly hearsay, citing authority. He also pointed out that there was no testimony establishing that the defendant heard her husband's statement. But, in addition, he pointed out that the defendant was at that time under arrest, and on advice of her *Miranda* rights had a right to remain silent. Justice Bakes observed that "[t]he rule announced by the majority which attempts to construe that silence as an admission, and thus corroborating evidence, flies in the face of that constitutional right." 96 Idaho at 332, 528 P.2d at 676.

He then discussed the prejudice worked upon the defendant, concluding that it required a new trial. "What evidence could be more damning and more fundamentally prejudicial to a defendant than to stand accused by one's own spouse. The damage such evidence could have on a jury is incalculable." 96 Idaho at 332, 528 P.2d at 676.

At this point, Justice Bakes was careful to remind the majority of the fundamental error doctrine then well in place:

To overlook the constitutional rights of a criminal defendant on the tenuous ground that there was no assignment of error appears to me to be a manifest denial of due process, especially in view of the history of this Court's application of that rule and other rules of appellate procedure. In *State v. Haggard,* 94 Idaho 249, 486 P.2d 260 (1971), appellant-defendant Haggard was convicted of assault with a deadly weapon and burglary in the nighttime. During the course of the trial the prosecution, in the cross-examination of appellant, questioned appellant concerning his failure to disclose his alibi at the preliminary hearing. Counsel

for appellant failed to raise an objection to the cross examination at the time of trial. In ruling upon appellant's contention that he was deprived of a fair trial because of the statement, this Court stated:

> Counsel for defendant failed to raise an objection to the cross-examination at the time of trial and ordinarily this Court would not consider this assignment of error. However, the obligation of the state to see that defendant receives a fair trial is primary and fundamental. *Pulver v. State*, 93 Idaho 687, 471 P.2d 74 (1970), quoting *McIntosh v. Commonwealth, Ky.*, 368 S.W.2d 331 (Ky.Ct.App.1963). In case of fundamental error in a criminal case the Supreme Court may consider the same even though no objection had been made at time of trial. [Citations omitted.]

*Swenor*, 96 Idaho at 332–33, 528 P.2d at 676–77. Substantial competent authority was cited to support the above views, including a case from the Supreme Court of the United States, *Pollard v. United States*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). Near the conclusion of his opinion he aptly stated that, "[w]hile assignments of error are helpful in having issues reasonably but not rigidly clarified in advance, they should not become a vehicle by which this court regresses to the 19th Century technicalities of the common law pleading system." 96 Idaho at 334, 528 P.2d at 678.

The Court's initial opinions in *Swenor* were issued on February 12, 1974, followed by the grant of a petition for rehearing, which resulted in the case being reargued. The Court's decision on rehearing was not forthcoming for nine months and one week. Meanwhile, after the initial *Swenor* opinions were filed, the Court on April 30, 1984, issued the *Cariaga* opinion, 95 Idaho 900, 523 P.2d 32, following which a petition for rehearing was filed and summarily denied on June 6, 1984. The Court unanimously let stand its opinion which had given Cariaga the benefit of the fundamental error doctrine. Justice Bakes, of course, had authored his dissenting opinion in *Swenor*

two and one-half months prior to the contrary decision in *Cariaga*, which readily makes it understandable why such uneven application of the fundamental error doctrine caused Justices Bakes and McQuade to *strongly* adhere to the views expressed in the dissent previously issued. 96 Idaho at 335, 528 P.2d at 679. The frustration which Justice Bakes must have suffered at seeing the Court practically at the same time issuing two opinions where one did, and the other did not, recognize and apply the doctrine of fundamental error is readily imaginable. In short, the *Swenor* dissent was aimed at persuading one of the three justices in the majority to some degree of consistency. But not the slightest response was made by anyone in the majority. Facially this is inexplicable, unless it be that arson was considered more serious than prostitution. Obviously there was no discrimination predicated on gender, the defendants in both cases being of the same genus, homo sapiens, and the same gender, female.

### IV.

■ The defendant Walters also places reliance on the doctrine of fundamental error. Walters is not an attorney. Cariaga was not an attorney. Wright was not an attorney. Each of those defendants necessarily had to have faith in their retained attorneys, the prosecutors, and the district courts to ensure that they received a trial free from highly prejudicial fundamental error. The Court has acknowledged the existence of the doctrine of fundamental error. The doctrine must be applied consistently to insure that justice is administered evenhandedly and that the doctrine is afforded to every defendant whose case comes before either appellate court.

■ From our examination of the entire record there is no doubting that the error at Walters' trial was fundamental. The State, however, urges us to hold that this should not justify reversal because Walters planned to and ultimately did testify at trial that he started the fire, but accidental-

ly. (Brief of resp. at 14; Hearing transcript at 37–38). This contention, were we to accept it, would necessarily require that we ignore the context in which the state's witness, Dillard, gave the jury his opinion that Walters was guilty. Dillard, an arson investigator, was the *first* prosecution witness. In addition, he was certified as an expert in arson and the state relied heavily on his testimony throughout the trial and in closing argument. Mr. Dillard's testimony that Walters started the fire followed immediately upon the heels of his testimony that he believed the fire was set *intentionally*. At that point the trial was as good as won by the State. Almost all of the other evidence against Walters was circumstantial—evidence concerning his behavior before and after the fire—for which he proffered explanations which could hardly overcome Dillard's testimony. This invasion of the jury function, instigated by the prosecutor and countenanced by the trial court, clearly foreclosed Walters' fundamental right to a fair trial. Walters' claim that he received ineffective assistance of counsel at trial is, of course, intertwined with defense counsel's failure to attempt to prevent the jury from hearing and considering the arson investigator's indictment against Walters.

The convictions are vacated, and the cause remanded for a new trial.

JOHNSON, J., concurs.

McFADDEN, J. Pro Tem., concurs in the result.

SHEPARD, J., sat, but did not participate in this opinion due to his untimely death.

HUNTLEY, J., sat, but did not participate prior to his resignation on August 7, 1989.

## ON REHEARING

BISTLINE, Justice.

### INTRODUCTION

The Attorney General petitioned this Court to grant a rehearing and reconsider our 1990 Opinion No. 9, filed January 24, 1990. In the second sentence of the argument part of its brief, the State agrees that the opinion testimony of the state fire investigator would probably have been excluded if there had been an objection to it. The Attorney General contends that defense counsel's failure to object did not constitute fundamental error because, so the argument goes, it was the intention of the defense from the outset to concede that defendant started the fire, but had done so accidentally. State's brief, filed June 30, 1988, at 12. If we accepted the State's contention that defense counsel had such an ill-advised intention, it would cause us to doubt that it was a decision which a reasonably competent criminal defense counsel would make.

As a second purported "issue," the State's brief in support of the petition for rehearing suggested, by innuendo, that a rehearing should be granted because the court's decision was rendered by only three justices, one of whom concurred only in the result. We, of course, were well aware of that circumstance. There were only three sitting justices. However, three votes constitutes a majority of the Court. In this instance there were three votes for the result and the opinion issued. The petition for rehearing also garnered sufficient votes, and the Court has had the benefit of additional briefing and further oral argument.

The consensus of the Court as presently constituted, *i.e.*, a full complement, is to agree with the State's argument that our earlier conclusion basing a reversal on the doctrine of fundamental error was inappropriate. Our earlier opinion, as published above, concluded with the statement that: "Walter's claim that he received ineffective assistance of counsel at trial is, of course, intertwined with defense counsel's failure to attempt to prevent the jury from hearing and considering the arson investigator's indictment against Walters." Accordingly, we now conclude that reversal of the judgment is more aptly based on the lack of effective assistance of counsel.

## INEFFECTIVE ASSISTANCE OF COUNSEL

On rehearing, the State contends that an opinion as to an ultimate issue is admissible under the rules of evidence and Idaho case law. Idaho Rule of Evidence 704 states that:

> **Rule 704. Opinion on ultimate issue.—** Testimony in the form of an opinion or inference *otherwise admissible* is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

I.R.E. 704 (emphasis added). Rule 704 has not opened the door to all opinions on every subject, particularly in a criminal trial. *State v. Pinero,* 778 P.2d 704, 711 (Hawaii, 1989). Rule 704 must be read in the light of Rule 702. Expert testimony is only admissible when the expert's specialized knowledge will assist the trier of fact to understand the evidence and determine a fact in issue. I.R.E. 702. Opinions which directly pass on the credibility of witnesses are generally not allowed. *State v. Lindsey,* 149 Ariz. 472, 720 P.2d 73 (1986), *State v. Myers,* 382 N.W.2d 91 (Iowa 1986), *State v. Rimmasch,* 775 P.2d 388 (Utah 1989), *State v. Pinero,* 778 P.2d 704 (Hawaii 1989). The Arizona Supreme Court in *State v. Lindsey,* a child sexual abuse case, explained that the basis for precluding expert testimony on the credibility of a witness was the danger of usurpation of the jury function and the lack of need for expert testimony on the truthfulness of witnesses. It said that:

> Thus, even where expert testimony on behavioral characteristics that affect credibility or accuracy of observation is allowed, experts should not be allowed to give their opinion of the accuracy, reliability or credibility of a particular witness in the case being tried. Nor should such experts be allowed to give opinions with respect to the accuracy, reliability or truthfulness of witnesses of the type under consideration. Nor should experts be allowed to give similar opinion testimony, such as their belief of guilt or innocence. The law does not permit expert testimony on how the jury should decide the case ... [T]he expert's function is to provide testimony on subjects that are beyond the common sense, experience and education of the average juror
>
> ...

*State v. Lindsey,* 149 Ariz. 472, 720 P.2d at 76. Generally, expert testimony that purports to determine whether a particular witness is truthful on a particular occasion is not permitted because there is no reason to believe that experts are any more qualified to render such opinions than are jurors. *State v. Rimmasch,* 775 P.2d 388 (Utah 1989). In a criminal trial where the expert opinion, as in this case, involves the weighing of the credibility of witnesses based upon their out-of-court statements, special caution must be exercised by the trial court to make certain that the expert's opinion is based upon his or her expertise and that it will assist the trier of fact in determining a fact in issue. Historically, the evaluation of the credibility of witnesses has been committed solely to the jury and they alone have the responsibility to determine the guilt or innocence of the accused.

While experts may render a wide range of opinions based upon their special skills or knowledge, we are not prepared to go so far as to hold that an expert may tender his opinion as to the ultimate fact in a criminal trial—the defendant's guilt or innocence of the crime charged. The expert's opinion in this case is a far cry from that given in *State v. Crawford,* 110 Idaho 577, 716 P.2d 1349 (Ct.App.1986), where the opinion which was permitted was a medical doctor's evaluation that a victim had suffered great bodily injury. *See, Lampkins v. United States,* 401 A.2d 966, 970 (D.C.App. 1979); *State v. Carlin,* 40 Wash.App. 698, 700 P.2d 323, 325 (1985). Although the opinion in *State v. Crawford* involved an ultimate issue, it was clearly based on the doctor's area of expertise and would have been helpful to the jury in resolving one of the issues before it. The opinion did not involve a statement of belief about the defendant's guilt or innocence, and his credibility, which is clearly the situation before the Court in this case. There is no reason to believe that the arson expert who

testified in this case was any better qualified to evaluate truthfulness than the jury. There was no need for the testimony and there was clearly the danger that a jury might give the arson expert's opinion undue weight.

■ As to the admissibility of Dillard's opinion, the State candidly acknowledges that "a timely objection to this testimony probably could have been sustained." Brief in Support of Petition for Rehearing, 5. Because there was not a timely objection, we have concluded that although the fundamental error doctrine has been recognized by this Court, in this instance, where the main thrust of the appeal was based on the constitutional right to effective assistance of counsel, we had no reason to apply it. More properly, we should have and could have decided that the reversal should have been based on the ineffective assistance ground.

■ As stated in *Carter v. State*, 108 Idaho 788, 702 P.2d 826 (1985):

As was indicated above, trial counsel failed to move to suppress these statements. Carter asserts that this amounted to a failure to provide reasonably competent assistance of counsel. The right to counsel under both the sixth amendment to the United States Constitution and art. 1, § 13 of the Idaho Constitution encompasses the right to effective counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Tucker*, 97 Idaho 4, 539 P.2d 556 (1975).

The Supreme Court recently set out the test for analyzing an ineffective assistance of counsel claim under the sixth amendment.

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland, supra*, 104 S.Ct. at 2064. The Court outlined a two-pronged test that the defendant must meet in order to prevail on an ineffective assistance of counsel claim. First, the defendant must

show that counsel's performance was deficient, that counsel made errors 'so serious that counsel was not functioning as the "counsel" guaranteed by the sixth amendment.' 104 S.Ct. at 2064. Second, the defendant must show that counsel's errors prejudiced the defense. 'The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 104 S.Ct. at 2068.

*Carter*, 108 Idaho at 794–95, 702 P.2d at 832–33. In *Carter* the ineffective assistance of counsel issue was raised in postconviction proceedings because the defendant in the prosecution action had been denied the assistance of counsel at the time he was being subjected to custodial interrogation. Trial counsel failed to move for suppression of any testimony of the deputy sheriff regarding a statement the defendant made during custodial interrogation, and this Court ruled that counsel's failure amounted to ineffective assistance of counsel under the *Strickland* test. *Carter*, 108 Idaho at 795, 702 P.2d at 833.

The first prong of the *Stickland* test is met in this case. Trial counsel's inexplicable failure to object to Dillard's extremely damaging opinion that the defendant was guilty of setting the fire was an error so serious that we rule that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. Trial counsel's failure to object to Dillard's damaging opinion is on par with the failure by counsel in *Carter* to move to suppress the damaging testimony of the deputy sheriff. *See Carter*, 108 Idaho at 795, 702 P.2d at 833.

The second prong of the *Strickland* test is also met in this case. To satisfy the second prong, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. There is little question that Dillard's opinion was prejudicial to Walters' defense. When an

arson expert declares that it was the defendant who set the fire in the house, there can be little doubt that the jury was impressed and influenced by the authoritative statement. Had Dillard been prevented from declaring his damaging opinion, there is at the least a reasonable probability that the outcome of the proceeding would have been different. Most certainly, that probability is "sufficient to undermine confidence in the outcome." Since all of the evidence which led to the defendant's conviction was circumstantial (there were no eyewitnesses or confessions), it is impossible to say that the accusation by the arson expert did not have a substantial influence on the verdict. Absent Dillard's testimony, there is no overwhelming evidence of the defendant's guilt. The second prong of the Strickland test is therefore met, and the defendant has met the burden of showing that he was denied effective assistance of counsel at trial.

The judgment of conviction is reversed, and the cause is remanded for a new trial.

BAIL, J. Pro Tem., concurs.

BOYLE, Justice, concurring in the result and specially concurring.

I concur with the result of the majority opinion. I write specially, however, to express my views on why the conviction in this case must be vacated and the case remanded for a new trial.

This consolidated case involves two appeals which are before this Court. The first appeal, No. 16630 filed September 17, 1986, is a direct appeal from the judgment of conviction. The second appeal, No. 17249 filed December 11, 1987, is an appeal from the denial of post-conviction relief by the district court. The two appeals were consolidated by order of the Court on January 18, 1988, leaving all issues open for our decision.

On January 24, 1990, this Court issued an opinion vacating the conviction of defendant and remanding for a new trial on the basis that the defendant's right to a jury trial had been abridged by the expert's testimony and that this resulted in fundamental error requiring reversal. The State

of Idaho filed a petition for rehearing which was granted on March 27, 1990 and this opinion followed. However, I am troubled about basing today's decision solely on the doctrine originally enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because all issues were left open for this Court's determination on rehearing, I write separately to indicate my rationale supporting today's decision.

I concur with the majority holding on the meaning of Rule 704. An expert's opinion on the "ultimate issue to be decided by the trier of fact" does not include the weighing of evidence to form an opinion as to who the guilty party is in a criminal trial. I.R.E. 704. The determination of guilt or innocence in criminal matters is within the exclusive province of the jury. While an expert may, as here, testify that in his opinion a fire was "deliberately set" and that it was "a case of arson," these opinions are permissible because they are the "ultimate issues" within the expert's expertise as contemplated under Rule 704. However, if we allow an expert *on the cause of fires* to weigh the evidence and testify as to *who* he believes is guilty of the crime of arson, we would be allowing the "expert" to leave the realm of his expertise and invade the province of the jury. The jury alone has the responsibility to weigh the evidence and conclude the "ultimate issue" of guilt or innocence.

Like the other members of the Court, I am troubled by the issue of the ineffective assistance of counsel. As discussed in the majority opinion, defense counsel did not object to the expert testifying on the ultimate issue of guilt. This was based on the defense strategy that the fire was set by the defendant by accident. This strategy was apparently formulated on the mistaken understanding that Rule 704 allowed an expert to testify on the ultimate issue of guilt in a criminal trial. Defense counsel testified at the post-conviction hearing that "any objections that I had, I believe were taken care of by Rule 704, which was in effect at that time, making questions hav-

ing to do with ultimate fact not objectionable."

While defense counsel was incorrect in his understanding of Rule 704, there was some precedent for this interpretation. In a *civil* case involving arson, a police expert was allowed to testify regarding who the chief suspects were in the criminal investigation. *Pacheco v. Safeco Ins. Co.*, 116 Idaho 794, 780 P.2d 116 (1989). *Pacheco* states:

> In addition to there being no prejudicial error, admission of the investigator's testimony also complied with the requirements of Idaho Rules of Evidence 702, 703, 704, and 705 in that he carefully described the evidence relied upon when he stated his opinion as to the cause of the fire.

116 Idaho at 798, 780 P.2d at 120. While I would interpret *Pacheco*'s discussion of Rule 704 as dicta,[3] I am uneasy with the Court's conclusion that the case should be remanded solely because defense counsel was inadequate, especially when the status of Rule 704 was unclear before this current opinion and when, under the circumstances, counsel's defense strategy of an accidental fire may have been all that was possible.

On the other hand, I am also dissatisfied with the view that defense counsel's representation was adequate because counsel's lack of objection was purely one of strategy. Even errors in strategy can be so grave that they represent circumstances in which an issue of ineffective counsel exists. This Court stated in *Gibson v. State*, 110 Idaho 631, 635, 718 P.2d 283 (1986), that

"when counsel's *trial strategy* decisions are made upon the basis of inadequate preparation, *ignorance of the relevant law*, or other shortcomings capable of objective evaluation, the defendant may well have been denied the competent assistance of counsel." Because defense counsel in this case was "ignoran[t] of the relevant law" and his faulty strategy was based on this misperception, it does not seem proper to say that defendant's representation was adequate.

However, as Chief Justice Bakes indicates in his dissent, a claim of ineffective counsel must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 669, 104 S.Ct. at 2055–56. As the dissent clearly points out, the district court concluded that the expert's impermissible statements were probably harmless error.[4] While, after a careful review of the record, I join the majority of this Court in concluding otherwise, I am of the opinion that reasonable minds can differ on the harmfulness of the error in this particular case where the evidence against the defendant was very damaging. Regardless of who is correct on the harmfulness of this error, the point is that no one really knows the impact the expert's assertions of guilt had on the individual jurors. Therefore, rather than rest our decision solely on whether the ineffectiveness of counsel altered the ultimate result in this case, I prefer to rest our decision on other grounds as well.

---

**3.** As I interpret *Pacheco*, the Court in that opinion concluded that judgement should be affirmed by relying on the harmlessness of the prejudicial error caused by allowing the expert's testimony into evidence. By indicating that the evidence was not prejudicial error, the Court could not simultaneously have held that the testimony was not error under Rule 704. In any event, *Pacheco* does not implicate the opinion in the instant case because *Pacheco* was a civil case, whereas this is a criminal case. Moreover, the expert's opinion expressed in *Pacheco* is vastly different from the absolute opinion allowed in the instant case in which the expert testified that the defendant "deliberately" started the fire. Finally, the language from *Pacheco* quoted above only found the expert's testimony "as to the cause of the fire" permissi-

ble under Rule 704, a conclusion with which I agree.

**4.** Chief Justice Bakes also concludes that the State's expert and defense counsel essentially said the same thing and therefore the error could not have been harmful. However, taken together, the expert not only testified that the fire was set by defendant, as defense counsel acknowledged, but that the defendant *deliberately* set fire to the home and therefore was guilty of the crime of arson. As everyone, including the State, agrees, such testimony is also error because it is clearly beyond an expert's expertise and thus contravenes Rule 704. Accordingly, the testimony of the expert was not the same as the State asserts and could have been harmful.

In my mind, the judgment of conviction must be vacated, not solely on the ground that defense counsel was inadequate, but also on the ground originally raised by the defendant and addressed by this Court in its initial decision—that allowing the expert to testify as to who was guilty of the crime was error so fundamental that it contravenes the defendant's right to a fair trial. When fundamental error occurs in a trial, it is irrelevant whether that error would have altered the ultimate verdict of the jury. In my view, the combined effects of ineffective assistance of counsel and the doctrine of fundamental error are the real reason why the case should be retried.

In *Smith v. State*, 94 Idaho 469, 491 P.2d 733 (1971), this Court accepted the following definition of fundamental error:

> Error that is fundamental must be such error as goes to the foundation or basis of the defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to prevent him to waive. Each case will of necessity, under such a rule, stand on its own merits. Our of the facts in each case will arise the law.

94 Idaho at 475 n. 13, 491 P.2d at 739 n. 13 (quoting *State v. Garcia*, 46 N.M. 302, 309, 128 P.2d 459, 462 (1942)); *see also State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989); *State v. Lankford*, 113 Idaho 688, 693 n. 2, 747 P.2d 710, 715 n. 2 (1987); *State v. Cariaga*, 95 Idaho 900, 523 P.2d 32 (1974); *State v. Haggard*, 94 Idaho 249, 486 P.2d 260 (1971). Under this rule, the defendant's right to a fair trial does not permit the State to allow an expert to testify that the defendant is guilty of the crime charged. This is in essence what occurred in the instant case.

When an attorney allows a fundamental error into evidence, the fact that the attorney fails to object to that error is of no consequence. The following language concerning the fundamental error doctrine from *State v. Haggard* is instructive:

> The appellant contends that he was denied due process and deprived of a fair trial because the prosecuting attorney elicited at trial that Haggard did not tell the judge of his alibi at the preliminary hearing. Appellant maintains that this information should not have been made available for the jury's consideration and by so doing the lower court deprived him of a fair trial. Counsel for defendant failed to raise an objection to the cross-examination at the time of trial and ordinarily this Court would not consider this assignment of error. *However, the obligation of the state to see that defendant receive a fair trial is primary and fundamental. In case of fundamental error in a criminal case the Supreme Court may consider the same even though no objection had been made at time of trial.* We agree with appellant that the cross-examination of the defendant (appellant) regarding his failure to testify at the preliminary hearing deprived appellant of a fair trial and was a denial of due process.

94 Idaho at 251, 486 P.2d at 262 (citations omitted) (footnote omitted) (emphasis added).

I am of the opinion that *Haggard* and its progeny set forth the proper analysis that requires reversal for the fundamental error which occurred during the trial. Because the introduction of the expert's opinion on the ultimate issue of *guilt* is so damaging and is beyond the expertise of the witness, I concur with the decision of the Court. I concur specially, however, to indicate that the conviction must be vacated and remanded for a new trial not solely because of defense counsel's inadequate representation, but because a fundamental error occurred at trial in allowing an opinion which essentially determines innocence or guilt of the defendant.

BISTLINE and JOHNSON, JJ., concur.

BAKES, Chief Justice, dissenting:

I disagree with the majority's conclusion that the defendant met his burden of showing that he was denied effective assistance of counsel. The majority is no doubt correct that, if objected to, the expert's statement that "I believe it was Mr. Walters" who set the fire, would have been inadmis-

sible under I.R.E. 704. However, the defendant's trial counsel, in the post conviction proceeding, testified that as a matter of strategy he did not object to the expert's testimony because they were admitting that the defendant started the fire, and it would have been inconsistent to object to the expert's opinion and then to admit to the jury that the defendant started the fire. Since the defense counsel made a conscious decision not to object, any claim of error, fundamental or otherwise, was invited and cannot be the basis for a claim of error on appeal. *State v. Caudill,* 109 Idaho 222, 226, 706 P.2d 456, 460 (1985) ("We will not reverse for the reason that one may not successfully complain of errors one has consented to or acquiesced in. In other words, invited errors are not reversible."). *See also State v. Owsley,* 105 Idaho 836, 673 P.2d 436 (1983); *State v. Sadler,* 95 Idaho 524, 511 P.2d 806 (1973).

Thus, the only issue we are facing in this appeal is a claim of ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-pronged test, which the majority opinion sets out on page 5, both prongs of which must be satisfied before a defendant may prevail on an ineffective assistance of counsel claim. As we stated in *Carter v. State,* 108 Idaho 788, 702 P.2d 826 (1985):

> The Supreme Court recently set out the test for analyzing an ineffective assistance of counsel claim under the sixth amendment.
>
> > "The benchmark for judging any claim of ineffectiveness must be whether the counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland, supra,* 104 S.Ct. at 2064.
>
> The Court outlined a two-pronged test that the defendant must meet in order to prevail on an ineffective assistance of counsel claim. First, the defendant must show that counsel's performance was deficient, that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment." 104 S.Ct. at 2064. Sec-

ond, the defendant must show that counsel's errors prejudiced the defense. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 104 S.Ct. at 2068.

108 Idaho at 794–95, 702 P.2d at 832–33.

As noted by the majority, to satisfy the second prong of the *Strickland* test, "the defendant 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Ante* at 56, 813 P.2d at 867. Arguing that the defendant satisfied this requirement, the majority states:

> There is little question that Dillard's opinion was prejudicial to Walters' defense. When an arson expert declares that it was the defendant who set the fire, there can be little doubt that a jury will be impressed and influenced by the authoritative statement. Had Dillard been prevented from declaring his damaging opinion, there is at least a reasonable probability that the outcome of the proceeding would have been different.

However, the trial court, which heard the testimony at the post conviction proceeding, concluded otherwise. The trial court concluded that the expert's opinion that the defendant started the fire was harmless because the defendant's strategy was to admit that he started the fire. The theory of the defense was that, while the defendant had started the fire, it was done accidentally, not intentionally. The defendant's trial counsel set forth two reasons for not objecting to the aforementioned testimony in an affidavit filed prior to the hearing on application for post conviction relief and in his testimony at the hearing. First, he stated that he did not object to the testimony because he intended to offer evidence that would establish that the defendant did start the fire, but had done so accidentally. He further explained at the hearing that he wished to have the jury focus on the question of whether the fire was started intentionally or accidentally, and that it would have been inconsistent to

object to the investigator's opinion that the defendant started the fire when the later defense testimony would effectively admit that he had done so, albeit accidentally. As trial counsel explained at the hearing:

> The strategy was that we wished to demonstrate that apparently the fire was of an accidental origin. That it would have come from the defendant; therefore, the statement that, "Did he start the fire," is a true statement. And to deny it would be to deny our defense strategy by, on the one hand, saying "no, he didn't start the fire," then on the other hand saying "well, yes, he did." And we felt that would be confusing to the jury if we tried to get the facts going both ways, whereas if we tried to steer them in one direction, that they would have a better chance of understanding that. What we wanted to show was yes, he did start the fire, but it was an accident, and therefore not arson.

The majority opinion ignores the testimony of the appellant's trial counsel, and the trial court's reliance upon it. If you consider the testimony of appellant's trial counsel, then the expert's opinion that he believed Walters started the fire is completely immaterial. How can it be said that the trial judge's ruling was clearly erroneous when the State's expert and the defense both said the same thing? Accordingly, I cannot concur with the majority that the trial result and the jury's verdict of guilty would probably have been different because of the expert's testimony that the defendant started the fire.[5]

The real issue at trial was not whether the defendant started the fire, but whether it was accidental or intentionally started. The expert Dillard, after explaining the foundation for his opinion, concluded that "the evidence suggests to me that it was deliberately set. A case of arson." This portion of the expert's testimony was admissible under the Rules of Evidence, and there is no claim here that this opinion was inadmissible. There was an abundance of evidence to support the expert's opinion that the fire was deliberately set. For example, Mr. Dillard testified that, based upon his investigation of the premises it was obvious that an accelerant, i.e., gas, gun powder, etc., had been used. Mr. Dillard testified that, though they weren't able to actually identify the type of accelerant, "just the fact that we had the type of charring, we had a fire that was identified to me as a rip-roaring fire within five minutes—you don't have a rip-roaring fire within five minutes unless you have some kind of accelerant to induce that type of a fire." Dillard explained that, "This fire also, through examination, was a fast and hot fire as opposed to a slow, smoldering fire. A slow smoldering fire, you have baked on residue on the window," and that Mr. Dallman had indicated to him that, "He saw a flash, then saw the fire up to the top of a window, a big window. You don't have that in five minutes in a normal fire."

In addition to this testimony, there was testimony tending to implicate defendant. The testimony of Mr. Tarter and Mr. Dallman provided ample evidence that the defendant had been the last one to leave the

5. Both the Court's opinion and the special concurring opinion suggest that the expert was permitted to testify as to the guilt of the defendant. However, the expert rendered only two opinions: (1) that the fire was intentionally started (which apparently all the members of this Court agree was an admissible expert opinion), and (2) that the defendant was the one that started the fire, which is the questionable evidence under Rule 704. Both the Court's opinion and the special concurring opinion conclude that by those two statements the expert was permitted to render an opinion on the ultimate issue to be decided by the trier of fact, i.e., who the guilty party was. However, that is not what the expert testified to. He never rendered an opinion that the defendant was "guilty." Merely because an expert renders an opinion which factually suggests that the defendant is guilty does not mean that the expert has rendered an opinion as to the guilt of the defendant, although a jury may well conclude that the defendant is guilty based upon the expert's opinion. Although guilt may be inferred from the expert's opinion, that does not mean that the expert has rendered an opinion as to guilt. In this case the expert rendered two opinions—that the fire was intentionally started, which the Court agrees was admissible, and the defendant was the one that started the fire, to which the defendant did not object, although he might have. Because his own trial strategy was to acknowledge that he had started the fire, albeit accidentally, any error in not objecting to the second opinion was harmless.

house on the morning of the fire, and that he had left only three to five minutes before the fire was detected. The testimony of the defendant and his fire investigator also established that the defendant's actions had caused the fire.

The circumstantial evidence, together with the expert's opinion that the fire was deliberately set, added to the defendant's concession that he accidentally started the fire, makes it clear that the expert's opinion that Walters started the fire was completely immaterial and did not affect the jury's verdict. Accordingly, even assuming that the failure to object to the expert's opinion violated the first prong of the *Strickland* test, the second prong of the test has not been satisfied, and the trial court's denial of the post conviction relief petition should be affirmed.