# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 40662

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2014 Opinion No. 76** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: September 24, 2014** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| JUSTIN B. MILLER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Benjamin R. Simpson, District Judge.

Judgment of conviction and sentences for aggravated assault and battery, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Chief Judge

Justin B. Miller appeals from his judgment of conviction after a jury found him guilty of aggravated assault and of battery. Specifically, he challenges several evidentiary rulings. For the reasons that follow, we affirm.

## I.

## FACTS AND PROCEDURE

This case arises out of a New Year's celebration that went awry. Several people were at Miller's house in Post Falls in the early hours of New Year's Day. Testifying at trial, a female house guest (the battery victim) recalled that she was in the kitchen when another guest asked the battery victim if she heard screams. The battery victim proceeded to the living room and could hear screams coming from the bedroom, which adjoined the living room. Opening a door to the bedroom, the battery victim saw Miller standing in front of his wife, who was sitting on the edge of the bed, and saw Miller with his hands around his wife's neck, choking her. The battery

1

victim intervened, but she was pushed away by Miller and hit her head on the open door. Two male guests also intervened, and the battery victim crawled out of the bedroom. The battery victim and the wife made their way to the kitchen where the wife and the battery victim discussed what happened.

Another female attendee (the assault victim), also testifying at trial, recalled that she was in the living room with one of the male guests. When the male guests went into the bedroom, the assault victim heard the wife say that Miller hit her and saw the battery victim on the floor trying to escape the bedroom. Miller directed people to get out of his house,[1] and the assault victim exited through a sliding door to the backyard of the house, but she left her coat and shoes in the house. Minutes later, the assault victim decided to go back into the house to get her belongings. As the assault victim went back in, Miller appeared with a shotgun, pointed the firearm at the assault victim, pumped the action, and told the assault victim that he was going to shoot her. Another house guest hollered at Miller, garnering his attention, and the assault victim grabbed her coat and shoes and ran out the front door.

The assault victim subsequently called 911 and reported the incident. Deputies with the Kootenai County Sheriff's Office responded to Miller's residence. Miller was charged by second amended information with domestic battery against his wife, aggravated assault against the assault victim, and misdemeanor battery against the battery victim. At trial, the State presented testimony from deputy sheriffs who arrived on the scene, including a deputy who spoke to the wife (the deputy); from a male house guest; from the battery victim; and from the assault victim. The defense presented testimony from Miller and from his wife. The defense also proffered testimony from two other house guests present for the events on New Year's Day. In rebuttal, the State called the deputy. The jury returned a guilty verdict on the aggravated assault and battery charges, but the jury found Miller not guilty of the domestic battery charge. For the aggravated assault charge, Miller was sentenced to a unified sentence of five years, with three years determinate, and the court retained jurisdiction.[2] Miller appeals.

---

[1] Although Miller testified that he was "frustrated," there is little doubt from testimony of other witnesses that Miller was angry when he directed people to "Get the f**k out of [his] house."

[2] For the misdemeanor battery, the district court imposed a sentence of 180 days with 178 days suspended and two days' credit for time served. Additionally, the court imposed a

2

## ANALYSIS

On appeal, Miller contends that the district court improperly admitted two irrelevant statements over objection. In addition, Miller argues that the district court improperly admitted two hearsay statements over objection. Finally, if we determine that more than one error was committed below, but we nonetheless determine that each individual error is harmless, Miller contends that the cumulative error doctrine applies. We review the district court's decision to admit evidence for an abuse of discretion. *State v. Thorngren*, 149 Idaho 729, 731, 240 P.3d 575, 577 (2010). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

**A.    Relevancy**

Miller argues that the district court improperly permitted the deputy to provide irrelevant testimony and improperly permitted the prosecutor to cross-examine the wife with irrelevant statements. Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Stevens*, 146 Idaho 139, 143, 191 P.3d 217, 221 (2008). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993).

**1.    The deputy's testimony**

The State's first witness was the deputy. He testified that he responded to a call, approached Miller's residence, and made contact with the assault victim. The prosecutor then

---

$250 fine, placed Miller on probation for two years, and ordered Miller to not have contact with the assault victim**.**

asked the deputy to use a whiteboard and "draw the house and where you contacted [the assault victim] for us . . . ." Presumably, the deputy used the whiteboard and continued to explain how he contacted the assault victim:

| | |
|---|---|
| [Deputy]: | Myself and Deputy Dyre were the first ones and Deputy Mumford were the first ones to arrive on scene. Deputy Mumford came in from another access street on the west side of the residence. Deputy Dyre and I came in on the east side of the residence. We parked probably a residence away due to officer safety, I mean threat of a gun being used to force people out of the house. |
| [Defense counsel]: | I object. I object. Move to strike. Hearsay. |
| [The Court]: | Overruled. It wasn't hearsay. |
| [Defense counsel]: | Not relevant. |

Although Miller's defense counsel interjected "Not relevant," the transcript does not reveal a response by the district court, and the deputy continued to explain the contact with the assault victim. Miller argues that the district court's admission of the testimony was erroneous because the testimony of where the deputies parked their vehicles was not relevant. The State contends that there is not an adverse ruling for this Court to consider. In the alternative, the State contends that the admission of the testimony concerning where the deputies parked was not erroneous.

We reject the State's first argument that the relevance objection was not preserved. Miller clearly objected on that ground, and the district court implicitly overruled the objection by allowing the testimony to proceed.

We also disagree with the State's contention that the testimony was relevant. Generally, "leeway is allowed even on direct examination for proof of facts that merely fill in the background of the narrative and give it interest, color, lifelikeness." 1 KENNETH S. BROUN, MCCORMICK ON EVIDENCE § 185 (6th ed. 2006); *accord State v. Walker*, 121 Idaho 18, 19, 822 P.2d 537, 538 (Ct. App. 1991) ("Generally, some leeway is allowed even on direct examination for preliminary facts that do not bear directly on the legal issues, but merely provide background for the narrative, to give it interest and context."). In this case, however, the officer's testimony was not needed to enable the jury to understand how the charged offenses came about or to provide needed background about the offenses. Rather, the officer described events that took place *after* Miller's alleged criminal conduct had ceased. Information about where the investigating officers parked and why they parked there was entirely irrelevant. Admission of that testimony allowed the jury to hear that the officer feared for his safety because a gun had

4

been used in the house, thereby conveying hearsay information received from the 911 call. Although courts are sometimes permitted to admit evidence of events that are not, strictly speaking, part of the charged criminal episode in order to give the jury a "complete story" if exclusion of the evidence could result in jury confusion or misleading inferences, *e.g.*, *State v. Truman*, 150 Idaho 714, 721, 249 P.3d 1169, 1176 (Ct. App. 2010); *State v. Blackstead*, 126 Idaho 14, 18, 878 P.2d 188, 192 (Ct. App. 1994), that principle has no application here. The officer's testimony about his concern for officer safety was not necessary to give the jury a complete story, and its absence would not have left any confusing gap in the narrative or resulted in misleading inferences. Accordingly, the testimony was irrelevant.

Having determined that the district court erred by admitting the testimony concerning where the officers parked and why they did so, we now examine whether the State has proved beyond a reasonable doubt that the error was harmless. *See State v. Perry*, 150 Idaho 209, 222, 245 P.3d 961, 974 (2010) ("A defendant appealing from an objected-to, non-constitutionally-based error shall have the duty to establish that such an error occurred, at which point the State shall have the burden of demonstrating that the error is harmless beyond a reasonable doubt."). Miller alleges that the error was not harmless because the information that the officers were concerned for their safety lent credibility to the assault victim's testimony that a firearm was used at the residence. The State argues that the deputy's testimony did not make the assault victim's report of what happened and her testimony any more or less credible, as it simply described the precautions used by the officers.

Here, the deputy's statement that there was a threat of a gun being used to force people out of the house was cumulative of what the assault victim testified to. Upon hearing the deputy's testimony and the assault victim's testimony, the jury would have known that his belief that a gun had been brandished was based solely upon information derived from the 911 call made by the assault victim. Therefore, the deputy's testimony logically did nothing to corroborate the assault victim's testimony or enhance her credibility. Further, although the various witnesses' testimony about Miller's handling of the shotgun was conflicting, one of the other guests confirmed the assault victim's testimony by saying that Miller had pointed the gun

at "everyone" and ordered everyone to leave. In short, the error admitting the irrelevant testimony was harmless.[3]

### 2. The wife's cross-examination

Testifying in Miller's defense at trial, the wife claimed that the red marks on her neck were from her baby's fingernails and from a necklace being pulled by her baby. During cross-examination, the prosecutor questioned the wife about her testimony as compared to statements she had previously made. Amongst the topics covered by the prosecutor, the prosecutor questioned the wife about statements she had made to the deputy on the morning of the incident. The prosecutor inquired of whether the wife had told the deputy that "it was a family tradition to go out on New Year's and shoot their guns." After the wife answered that she did not, the prosecutor then asked the wife, "Is it a family tradition to go out and shoot guns on New Year's?" The wife answered that it was not, and Miller objected, contending that the statements were not relevant. The court overruled Miller's objection, and subsequently, the detective testified in rebuttal that the wife did inform him of the family tradition.

Miller argues that the statements were not relevant. Under Idaho Rule of Evidence 607, any party may attack the credibility of a witness. The party challenging the credibility of the witness may examine the witness about a prior statement by the witness. I.R.E. 613(a). "To be admissible for impeachment purposes evidence of a witness's prior inconsistent statement must be relevant to the witness's trial testimony." *Perry*, 150 Idaho at 219, 245 P.3d at 971 (referencing I.R.E. 401). In this case, it is apparent from the context of the questioning that the prosecutor was attempting to elicit facts from the wife in an attempt to discredit the wife with a prior inconsistent statement.[4] However, the statements used by the prosecutor were not relevant. Before the prosecutor referred to the discussion between the deputy and the wife, there had not been testimony about a family tradition. Furthermore, the witnesses at trial, including the wife, testified that Miller grabbed a shotgun and was holding it when the assault victim was back in

---

[3] Given our holding that the statements used by the prosecutor were not relevant, we need not address Miller's argument that the danger of unfair prejudice substantially outweighed the probative value of the statements.

[4] Although the wife did not testify on direct examination about the family tradition, a party is permitted to draw out the statements on cross-examination that they wish to attack with a prior inconsistent statement. 1 KENNETH S. BROUN, MCCORMICK ON EVIDENCE § 34 (6th ed. 2006).

the house. The disputed issue was whether Miller had pointed the shotgun at the assault victim and not whether Miller had access to a shotgun. Accordingly, the court erred by overruling the relevance objection. Under *Perry*, the burden is now upon the State to demonstrate that the error is harmless beyond a reasonable doubt. *Perry*, 150 Idaho at 222, 245 P.3d at 974.

The State argues that the district court's error is harmless because it did not contribute to the jury's verdict finding Miller guilty of aggravated assault. We agree. The wife testified on direct examination that when the assault victim was back in the house, Miller removed a shotgun from a closet and held it in his hands before another house guest grabbed it from him. The wife specifically testified that Miller did not point the shotgun at the assault victim. The wife's testimony was consistent with testimony from Miller and from two other house guests, including the house guest who claimed that he grabbed the gun from Miller. Accordingly, even if the wife's credibility concerning her testimony about the shotgun and her husband's actions were downplayed by the jury, there were multiple witnesses who testified consistent with her testimony, and the jury chose to disbelieve the other witnesses' account of the events. Accordingly, we are persuaded beyond a reasonable doubt that the error is harmless.[5]

## B.     Hearsay

Miller also argues that the district court erred by admitting inadmissible hearsay from the battery victim and from the assault victim. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." I.R.E. 801(c); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994). Hearsay is inadmissible unless otherwise provided by an exception in the Idaho Rules of Evidence or other rules of the Idaho Supreme Court. I.R.E. 802.

### 1.     The battery victim's statement

During the trial, the battery victim testified to her memory of the events. Relevant to this issue, she testified to her interaction with Miller's wife in the kitchen after the incident in the bedroom. According to the battery victim, the wife was shaky, was crying, and had a red face. Additionally, the battery victim testified that the wife made a statement to her:

---

[5]     Given our holding that the statements used by the prosecutor were not relevant, we need not address Miller's argument that the danger of unfair prejudice substantially outweighed the probative value of the statements.

| | |
|---|---|
| [The prosecutor]: | How long after you witnessed her husband choking her did she make this statement? |
| [The battery victim]: | I would say a minute, maybe. |
| [The prosecutor]: | And did the statement she make [sic] pertain to what had just happened? |
| [The battery victim]: | Yes. |
| [The prosecutor]: | What did she tell you? |
| [Defense counsel]: | I object, hearsay. |
| [The prosecutor]: | Laying the grounds for an excited utterance. |
| [The Court]: | Do you wish to respond to excited utterance? |
| [Defense counsel]: | Sorry, your Honor? |
| [The Court]: | He has asserted excited utterance as an exception. Do you wish to respond? |
| [Defense counsel]: | Yes. It has to be a foundation that was made under the-- what's the language used--still under the influence of the -- |
| [The Court]: | Enough time to reflect. |
| [Defense counsel]: | -- enough time to reflect on the circumstances. And there is also the confrontation clause issue, Judge. |
| [The Court]: | I am going to allow her to answer the question. |
| [The prosecutor]: | What did [the wife] say there in the kitchen? |
| [The battery victim]: | She stated he hit me. *And my response to her was hit you. He was choking you.* |
| [Defense counsel]: | I object to that as hearsay. |
| [The Court]: | It is this witness's statement. |
| [Defense counsel]: | That witness's statement is hearsay, yes. |
| [The Court]: | This is what the witness said to [the wife], he was choking you. That's not hearsay. She is here and she is testifying. |
| [Defense counsel]: | Well, she has testified as to what she said back then, Judge. It makes it an out-of-court statement. If it is offered for the truth, in my opinion, it makes it hearsay. |
| [The Court]: | It is not hearsay. Overruled. |

(Emphasis added.) Miller maintains that the battery victim's testimony about what she said to the wife--that Miller was choking the wife--was hearsay and was improperly admitted. We agree.

Generally, a testifying witness's testimony relaying the witness's prior statements is hearsay, if offered for the truth of the matter asserted in the statements. I.R.E. 801(c); *see* 2 KENNETH S. BROUN, MCCORMICK ON EVIDENCE § 251 (6th ed. 2006) ("[A] prior statement, even one made by the witness, is hearsay if offered to prove the matters asserted therein."); D. CRAIG LEWIS, IDAHO TRIAL HANDBOOK § 19:2 (2nd ed. 2005) ("[A] testifying witness's present testimony relating the witness's own past statements is hearsay."). Under Rule 801(d)(1), a prior

statement by a witness who has testified and is available for cross-examination, is nonhearsay only if:

> the statement is (A) inconsistent with the declarant's testimony and was given under oath and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person.

*See State v. Trevino*, 132 Idaho 888, 895, 980 P.2d 552, 559 (1999) (analyzing under Rule 801(d)(1) an attorney's testimony relaying statements made to him by his client, who testified at trial).

In this case, the battery victim's testimony, relaying her own out-of-court statement, was offered for the truth of the matter asserted in the statement and would thus fall under the definition of hearsay. The Rule 801(d) nonhearsay categories are inapplicable, and thus the testimony relaying the statement is hearsay. The State has not argued, either at trial or on appeal, that the hearsay statement at issue falls within one of the hearsay exceptions identified in I.R.E. 803 and 804. The State argues only that the challenged testimony was admissible for the nonhearsay purpose of showing "the course of events" after the charged offenses occurred. However, the State did not indicate at trial that the evidence was proffered for this narrow, nonhearsay purpose, and the jury was not instructed to consider it only for such purpose. Moreover, the State does not explain how the course of events *after* the criminal conduct had concluded is relevant. Accordingly, the court erred by admitting the out-of-court statement.

We turn to the *Perry* analysis of whether the error was harmless. The State has the burden of demonstrating that the error is harmless beyond a reasonable doubt. *Perry*, 150 Idaho at 222, 245 P.3d at 974. Although Miller acknowledges that he was acquitted of the charge against the wife, to which the statement pertains, he maintains the error was not harmless because the error would have affected the outcome of the aggravated assault charge. For the aggravated assault charge, Miller argues that the statement reduced his wife's credibility with the jury; as discussed above, Miller's wife testified that Miller did not point the gun at the assault victim. However, Miller overlooks the fact that the credibility of his wife's testimony was challenged on several occasions during her cross-examination by the prosecutor. The prosecutor challenged the wife's testimony concerning the amount of alcohol she had consumed based on the wife's statements at

9

the preliminary hearing. Next, the prosecutor impeached the wife's testimony at the trial, in which she testified that Miller did not hit her with the back of his hand, with testimony at the preliminary hearing, in which she testified that Miller "backhanded me off the bed." The prosecutor also impeached the wife with her testimony concerning the course of events when Miller grabbed the shotgun, using a written statement the wife made approximately two weeks after the incident. In addition, the prosecutor challenged the wife's testimony that the baby's fingernails had caused the injury to her neck, using her testimony at the preliminary hearing. In short, the statements made by the battery victim, even if they impacted the wife's credibility, were not the only statements that impacted the wife's credibility. Accordingly, we are persuaded beyond a reasonable doubt that the error in admitting the battery victim's statements was harmless.

### 2. The assault victim's testimony

During the trial, the assault victim testified to the events at the house, including Miller pointing the firearm at her. Relevant to this issue, she also discussed the 911 call she made:

| | |
|---|---|
| [The prosecutor]: | How long do you think your conversation was with the 911 operator? |
| [The assault victim]: | I would say approximately five minutes. |
| [The prosecutor]: | Did you tell the 911 operator what had just happened to you? |
| [Defense counsel]: | I object, your Honor, as to relevance and hearsay. |
| [The Court]: | I am going to allow it. It is not hearsay. It is marginally relevant. |
| [The assault victim]: | Yes, I did. |
| [The prosecutor]: | Did you indicate to the 911 operator that Mr. Miller pointed a shotgun at you? |
| [The assault victim]: | Yes. |
| [Defense counsel]: | That does call for hearsay, the content of what she said. |
| [The Court]: | Overruled. The witness is present under oath and subject to cross-examination. |
| [The prosecutor]: | Go ahead and answer. |
| [The assault victim]: | Yes, I did. |

Miller contends that the court erred by admitting the assault victim's statement acknowledging that she told the 911 operator that Miller pointed the firearm at her. Miller argues this statement was only offered for the truth of the matter asserted in the statement. The State maintains that the assault victim's statements were offered to establish the course of events after the assault.

As with the battery victim's statements, the assault victim's testimony contains hearsay statements, specifically the statements concerning what the assault victim told the 911 operator. I.R.E. 801(c); s*ee* 2 KENNETH S. BROUN, MCCORMICK ON EVIDENCE § 251 (6th ed. 2006) ("[A] prior statement, even one made by the witness, is hearsay if offered to prove the matters asserted therein."); D. CRAIG LEWIS, IDAHO TRIAL HANDBOOK § 19:2 (2nd ed. 2005) ("[A] testifying witness's present testimony relating the witness's own past statements is hearsay."). The statements were offered for the truth of the matter asserted, and none of the Rule 801(d) nonhearsay categories apply. The State has not argued, either at trial or on appeal, that the hearsay statements at issue fall within one of the hearsay exceptions identified in I.R.E. 803 and 804. The State argues only that the challenged testimony was admissible for the nonhearsay purpose of showing "the course of events" after the charged offenses occurred. However, the State did not indicate at trial that the evidence was proffered for this narrow, nonhearsay purpose, and the jury was not instructed to consider it only for such purpose. Moreover, the State does not explain how the course of events *after* the criminal conduct had concluded is relevant. Accordingly, the court erred by admitting the out-of-court statements.

We turn to the *Perry* analysis of whether the error was harmless. The State has the burden of demonstrating that the error is harmless beyond a reasonable doubt. *Perry*, 150 Idaho at 222, 245 P.3d at 974. Prior to her testimony about the 911 call, the assault victim explained the events leading up to her exiting through a backdoor without her coat and shoes. She then testified that she went back into the house and that Miller approached her with a shotgun and pointed the firearm at the assault victim, pumped the action, and told the assault victim that he was going to shoot her. According to her, another house guest garnered Miller's attention, and the assault victim grabbed her coat and shoes and ran out the door. There was no objection to this testimony. The assault victim's acknowledgement that she told the 911 operator that Miller pointed a shotgun at her was "simply cumulative to evidence already introduced without objection." *State v. Crawford*, 110 Idaho 577, 581, 716 P.2d 1349, 1353 (Ct. App. 1986) (explaining that a doctor's testimony was cumulative because other witnesses had already testified as to Crawford's wife's incriminating statements). Under these circumstances, we hold that any error in allowing the assault victim's testimony was harmless and does not justify reversal of the conviction. *Id.*

## C. Cumulative Error

Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). In this case, Miller established four errors, and we concluded that each error was harmless. "The presence of errors, however, does not by itself require the reversal of a conviction, since under due process a defendant is entitled to a fair trial, not an error-free trial." *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998) (citing *Bruton v. United States*, 391 U.S. 123, 135 (1968)). As to the statements made by the deputy, they did not corroborate the assault victim's testimony about what happened inside the household; other household guests testified Miller grabbed the shotgun, with one guest noting that Miller pointed the firearm at everyone. The wife's testimony relating to the alleged aggravated assault was consistent with the testimony of other witnesses at trial, yet the jury ultimately did not accept their testimony. In addition, the wife's credibility was challenged on multiple occasions during cross-examination, as discussed above. As to the error involving the statements made by the assault victim on the 911 call, the assault victim had already provided unchallenged testimony about the shotgun incident. In sum, the errors, when viewed in relation to the totality of the testimony at trial, did not deprive Miller of a fair trial.

### III.

### CONCLUSION

The court erred in admitting the testimony concerning where the deputy parked his car, the family tradition of shooting, what the wife and battery victim discussed in the kitchen, and the statements made during the 911 call. However, we are persuaded that the errors were harmless. Therefore, Miller's judgment of conviction is affirmed.

Judge LANSING and Judge MELANSON, **CONCUR.**