**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48015**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: October 15, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JIM EUGENE NEADERHISER, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Thomas F. Neville, District Judge.

Judgment of conviction for abuse, exploitation or neglect of a vulnerable adult, affirmed.

Nevin, Benjamin & McKay LLP; Dennis A. Benjamin, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Jim Eugene Neaderhiser appeals from his judgment of conviction for abuse, exploitation or neglect of a vulnerable adult, Idaho Code § 18-1505(3). Neaderhiser asserts the district court abused its discretion by allowing the State to introduce inadmissible hearsay evidence. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Following an investigation by law enforcement, the State charged Neaderhiser with taking money, property or credit from a vulnerable adult, Lee Tackman, between July 2013 and November 2014. Neaderhiser pled not guilty, and the case proceeded to trial. At trial, the evidence showed that Neaderhiser was in a relationship with Tackman's granddaughter, Linda

1

DeAnn Bassett.[1]  Bassett had cared for Tackman for several years; Neaderhiser was Bassett's boyfriend in 2013 and 2014; and Bassett and Neaderhiser lived together for a period of time in Tackman's home in Ada County.

In August 2013, Tackman executed a power of attorney granting Bassett "all powers of an absolute owner" over his financial assets, including the power to gift Tackman's real and personal property for any prudent purpose, except for Bassett's own benefit or to satisfy her legal obligations.  Less than a month later, Tackman was admitted to the Idaho State Veterans Home, which provides senior assisted living and nursing home care services.[2]  Shortly thereafter, Tackman executed a will bequeathing certain items of personal property to his children but bequeathing his home and all his remaining property to Bassett.

In early November 2014, a social worker observed Neaderhiser visiting Tackman at the Veterans Home and "trying to get [him] to sign documentation," including a quitclaim deed for Tackman's home.  At trial, the social worker testified that Neaderhiser was "aggressive" and "desperate" when interacting with Tackman and spoke "in a very demeaning manner" about Tackman's sons.  The social worker confronted Neaderhiser about his conduct and encouraged him "not to do that" and, in response, Neaderhiser became "angry" and "attempted" to be "physically intimidating."  In mid-November 2014, the social worker wrote a letter "to whom it may concern," stating that Tackman was "no longer competent to handle his financial affairs independently"; he had assigned his power of attorney to his sons; and he had been diagnosed with, among other things, dementia.  In December 2014, Tackman executed a power of attorney in favor of his sons and revoked his prior power of attorney.

Also in early November 2014, an agent from Adult Protection Services met with Tackman in person to investigate the possibility that he was being exploited.  After meeting with Tackman and learning from his sons that "large amounts of money" were missing from Tackman's accounts, the agent filed a report with law enforcement stating that Tackman was a "vulnerable adult" who Bassett and Neaderhiser may have exploited.  Detective Spain of the

---

[1]     Like Neaderhiser, Bassett was also charged with exploiting Tackman.

[2]     On appeal, Neaderhiser states Tackman was admitted to the Veterans Home in September 2013.  Several references in the record support a September 2013 admission date.  At least one document and the social worker's testimony, however, are inconsistent with that date and indicate Tackman was admitted to the Veterans Home in June 2013 before he signed the August 2013 power of attorney.

Boise City Police Department's financial crimes unit investigated the agent's report and interviewed the social worker, Tackman, Bassett, and Neaderhiser.

After interviewing Tackman, Detective Spain concluded that Tackman did not "have a full and accurate understanding of his finances, his balances, [and] his outstanding credit and loans." When Detective Spain interviewed Neaderhiser, he provided Detective Spain with the August 2013 power of attorney granting Bassett control over Tackman's assets; admitted using Tackman's funds; and explained both that Tackman was "a very charitable person" and that "anything that was done was done either with the knowledge and permission of [Tackman or Bassett]." Regarding Neaderhiser's admission about using Tackman's assets, Detective Spain testified:

> There were deposits to [Neaderhiser's] business. There were [sic] funding for personal travel. There were vehicles, at least four different vehicles that financing was established for. There were modifications or repairs done to [Tackman's] home. There were actual mortgage loans obtained for using [Tackman's] residence as collateral. Things like that.

During Detective Spain's testimony, the State admitted in evidence an audio recording of Detective Spain's interview with Neaderhiser during which Neaderhiser made these admissions.

The State also admitted in evidence voluminous financial records about which Detective Spain testified. These records show Neaderhiser used Tackman's funds and credit for purposes of, among other things, supporting Neaderhiser's automotive business, paying off two Harley-Davidson motorcycles, financing a motor home and a Ford Escape, remodeling Tackman's home, and traveling to Las Vegas with Bassett. Although Detective Spain did not testify about the total amount of funds Neaderhiser used and of the indebtedness Neaderhiser incurred in Tackman's name, Detective Spain testified the amounts were "very much in excess" of $1,000.

At trial, the State also presented the testimony of Dr. Robert Smith, Tackman's treating physician and the medical director of the Veterans Home. Dr. Smith testified he became Tackman's treating physician in February 2014. During Dr. Smith's testimony, the State offered Exhibit 3 for admission into evidence. Exhibit 3 is entitled "Admission Record," and according to Dr. Smith's testimony, it shows Tackman's admissions to the Veterans Home, including his re-admissions to the Veterans Home after periods of hospitalization at acute care facilities. The entries on Exhibit 3 show Tackman was admitted or re-admitted to the Veterans Home on five different dates--September 2013, February 2014, June 2014, September 2016, and October 2016. Each of these entries list various diagnoses for Tackman.

At trial, Neaderhiser objected to the State's motion to admit Exhibit 3. The crux of Neaderhiser's objection was that Dr. Smith was not Tackman's treating physician before February 2014 when the September 2013 diagnoses listed on Exhibit 3 were made:

[Defense Counsel:] [The] objection would be that *some* of those [diagnoses identified on Exhibit 3] are hearsay that aren't valid exceptions because there's no foundation to those diagnoses.

And [second], since there hasn't been [an Idaho Criminal Rule 16(b)(7)] disclosure in this case, having Dr. Smith lay foundation for a document that isn't something that's going to be used for expert testimony, I don't see where we can't keep this limited to the diagnoses that Dr. Smith himself did.

[The Court:] *So you're objecting in part and not objecting in other part; is that right?*

[Defense Counsel:] *Correct*, Judge. I think that the diagnoses that Dr. Smith himself diagnosed and the ones that he himself saw are relevant, and I think he can lay sufficient foundation for those. *But as far as other diagnoses that came before Dr. Smith was put on this case in February of 2014, I think that the admission of this is insufficient --or there's insufficient foundation for admission.*

(Emphasis added.)

In response to Neaderhiser's objection, including to his statement that "there's been no expert disclosure under Rule 16," the prosecutor stated:

I'm not asking for an ultimate opinion related to something [Dr. Smith] does not have firsthand knowledge of. Dr. Smith is the treating physician. We've laid foundation for that. And within the realm of his treatment he is able to either ratify or is the sole source of these diagnoses.

The prosecutor also argued Exhibit 3 was admissible under Idaho Rule of Evidence 803(6) as a business record: "Additionally, [Exhibit 3 is] a business record that documents the admissions for [Tackman]. I think it's admissible under that alternative theory as well."

Despite Neaderhiser's objection to Exhibit 3 "in part," the district court never addressed the admissibility of Exhibit 3--either under Rule 803(6) as a business record or otherwise. Rather, the court ruled only on the issue of whether Dr. Smith could testify about the post-February 2014 diagnoses listed on Exhibit 3, which Dr. Smith made as Tackman's treating physician. Addressing those post-February 2014 diagnoses, the court stated, "I'll overrule as to the expert opinion, Rule 16. I think the treating physician is certainly in a position *to talk about*

4

*his own diagnoses as part of his treatment* without offering a separate opinion."[3]  (Emphasis added.)

The district court, however, did not directly rule on whether Dr. Smith could testify about the pre-February 2014 diagnoses to which Neaderhiser's objection actually related.  Those diagnoses are the September 2013 diagnoses listed on Exhibit 3, which were made before Dr. Smith became Tackman's treating physician.  About the September 2013 diagnoses, the court simply stated, "I think the other objection you had . . . to *the diagnoses prior in time and other diagnoses on [Exhibit 3] that were not those of this physician, those I think can be further described on your cross-examination*."  (Emphasis added.)  After this exchange, the court stated, "I'll overrule the objection and I'll admit Exhibit 3"; the prosecutor published Exhibit 3 to the jury; Dr. Smith testified on direct examination about Exhibit 3 without any further objection; and Neaderhiser never cross-examined Dr. Smith about the September 2013 diagnoses.

The jury found Neaderhiser guilty of exploiting Tackman, and Neaderhiser timely appeals.

## II.

## STANDARD OF REVIEW

The decision whether to admit evidence at trial is generally within the province of the trial court.  A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion.  *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999).  Therefore, a trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion.  *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992).  When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court:  (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason.  *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

---

[3]  We note that this ruling was unnecessary.  Neaderhiser did not challenge the admissibility of Dr. Smith's testimony about post-February 2014 diagnoses listed on Exhibit 3.  Rather, these diagnoses were the "part" of Exhibit 3 to which Neaderhiser did not object, as the district court expressly confirmed.

### III.

### ANALYSIS

**A.      Neaderhiser's Hearsay Objection**

On appeal, Neaderhiser argues the district court erred by admitting Exhibit 3 and also by allowing Dr. Smith to testify about the pre-February 2014 diagnoses, namely the September 2013 diagnoses listed on Exhibit 3.[4]  Neaderhiser contends the September 2013 diagnoses are inadmissible hearsay.  He also now contends the entirety of Exhibit 3 is inadmissible hearsay.  As an initial matter, we note Neaderhiser objected only to the admissibility of a portion of Exhibit 3 as hearsay.  That objection was to the September 2013 diagnoses.  The court expressly inquired whether Neaderhiser was "objecting in part" to Exhibit 3, to which Neaderhiser's counsel responded, "Correct."  Generally, this Court will not consider error which the appellant failed to preserve for appeal by objecting to the error at trial.  *State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010).  To the extent Neaderhiser is now asserting on appeal that the entirety of Exhibit 3 is inadmissible hearsay, he did not preserve that challenge for appeal.  Accordingly, when addressing the admissibility of Exhibit 3 on appeal, we consider only the September 2013 diagnoses to which Neaderhiser objected at trial.

The State does not dispute that either Exhibit 3 or the September 2013 diagnoses are hearsay.  Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  I.R.E. 801(c); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994).  Hearsay is inadmissible unless otherwise provided by an exception in the Idaho Rules of Evidence or other rules of the Idaho Supreme Court.  I.R.E. 802.

Although the district court overruled Neaderhiser's objection, the court never specifically addressed his hearsay objection.  The court neither accepted nor rejected Neaderhiser's hearsay assertion, and it did not identify or analyze any exception to the rule against hearsay under which it was admitting Exhibit 3, despite the State's express reliance on the business records exception in Rule 803(6).  Consequently, we do not have the benefit of the district court's analysis under the rule.  To be admissible under Rule 803(6), the foundational requirements of the rule must be

---

[4]      On appeal, Neaderhiser also argues this evidence is not admissible under Idaho Rule of Evidence 703, which provides for the admission in evidence of information on which an expert relies if that information's probative value outweighs its prejudicial effect.  The State, however, does not rely on Rule 703.  As a result, we do not address Neaderhiser's Rule 703 argument.

satisfied. The record, however, reflects the State failed to meet these requirements before seeking admission of Exhibit 3 under Rule 803(6). The court, thus, both failed to act consistently with the applicable standards for analyzing the admissibility of hearsay and failed to reach its decision by an exercise of reason. *Id.*

For purposes of appeal, however, Neaderhiser only preserved this error with respect to the September 2013 diagnoses listed on Exhibit 3 to which he objected at trial. As the State correctly notes, Neaderhiser failed to preserve for appeal his hearsay objection to Dr. Smith's testimony about the September 2013 diagnoses. After the district court admitted Exhibit 3, despite Neaderhiser's hearsay objection, Neaderhiser never objected again to any of Dr. Smith's testimony--including his testimony about the September 2013 diagnoses. On reply, Neaderhiser asserts he was not required to renew his objection to this testimony and relies on I.R.E. 103(b). Rule 103(b) provides that "once the court rules *definitively* on the record[,] a party need not renew an objection . . . to preserve a claim of error for appeal." (Emphasis added.) Neaderhiser argues the court's statement that the "other diagnoses prior in time and other diagnoses on [Exhibit 3] that were not those of this physician, those I think can be further described on your cross-examination" was a "definitive" ruling under Rule 103(b), rejecting Neaderhiser's hearsay objection. We disagree. While the court's statement is an implicit ruling that Dr. Smith could testify about the September 2013 diagnoses, *see State v. Miller*, 157 Idaho 838, 842, 340 P.3d 1154, 1158 (Ct. App. 2014) (ruling court implicitly overruled objection by allowing testimony to proceed), the court neither definitively addressed Neaderhiser's hearsay objection nor the scope of Dr. Smith's permissible testimony. As a result, Neaderhiser was required to renew his objection to Dr. Smith's subsequent testimony to preserve any argument challenging that testimony for appeal.[5]

**B.    Harmless Error**

Because Neaderhiser did not preserve for appeal any challenge to Dr. Smith's testimony, we consider only the admission in evidence of the September 2013 diagnoses listed on Exhibit 3 for purposes of determining whether the district court's abuse of discretion was harmless. Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct.

---

[5]    We also note that, on appeal, Neaderhiser does not identify any specific testimony by Dr. Smith that he contends the district court improperly admitted. Absent the identification of the allegedly offending testimony, we cannot analyze its admissibility.

App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to, nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* Harmless error is error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020). This standard "requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error." *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)

Neaderhiser argues the district court's error in admitting Exhibit 3 was not harmless. Specifically, Neaderhiser argues he was prejudiced when the prosecutor in closing argument referenced Tackman's September 2013 "failure to thrive" diagnosis. Regarding this diagnosis, the prosecutor argued:

> [Tackman] was failing to thrive. His health was failing. That doesn't happen overnight. That takes time.
> We know that he executed this will and this power of attorney within weeks of receiving a failure to thrive, dying, his body is shutting down, diagnosis.
> I submit to you, ladies and gentlemen, that physical impairment, coupled with a diminished psychological capacity or cognitive function made him vulnerable.

Based on this closing argument, Neaderhiser argues the State used "improperly admitted evidence to prove [Tackman] was a vulnerable person at the time he executed the will and the power of attorney" and to "undercut [Neaderhiser's] defense that he could legitimately receive the money from [Tackman] under the terms of those documents."

We disagree that the admission of evidence about Tackman's September 2013 "failure to thrive" diagnosis constitutes reversible error. Exhibit 3 simply lists "failure to thrive" as one of several diagnoses in September 2013 without any further explanation or information. Dr. Smith

8

never testified about the meaning of the "failure to thrive" diagnosis. For example, he did not testify how long it takes for the condition to develop or when it developed; he did not testify that such a diagnosis means Tackman was "dying" or "his body [was] shutting down"; and he did not testify about whether the diagnosis had any impact on Tackman's "psychological capacity or cognitive function [making] him vulnerable." Rather, Dr. Smith's sole testimony about the "failure to thrive" diagnosis was "[a]dult failure to thrive, in my reading of his records was a diagnosis at his initial admission" to the Veterans Home.

Additionally, the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt. *See Garcia*, 166 Idaho at 674, 462 P.3d at 1138 (discussing harmless error analysis). To prove Neaderhiser exploited Tackman, the State had to prove beyond a reasonable doubt that Tackman was a "vulnerable" adult and that Neaderhiser exploited Tackman between July 2013 and November 2014, causing more than $1,000 in monetary damages. The State introduced ample evidence to prove these elements. For example, the State introduced voluminous financial documentation of Neaderhiser's use of Tackman's assets for Neaderhiser's benefit. Detective Spain testified at length about these documents including, for example, that Neaderhiser spent $23,500 of Tackman's money to pay for two Harley-Davidson motorcycles; incurred over $11,000 on a credit card for which Tackman was responsible; transferred thousands of dollars from Tackman's account to Neaderhiser's business account; and obtained in excess of $100,000 in mortgages on Tackman's home while Tackman was living at the Veterans Home.

Regarding Tackman's vulnerability, the State presented evidence that, in November 2014, Tackman was no longer competent to handle his financial affairs and was "not cognitively able to answer all the questions" about his finances and that, during that same time, Neaderhiser was aggressively and desperately trying to get Tackman to sign a quitclaim deed for his home. Additionally, Dr. Smith testified that Tackman was diagnosed with dementia in June 2014; his physical health was "overall declin[ing]" from February 2014 until his death; and Tackman's declining physical health adversely affected his mental health.

Based on this evidence, the prosecutor's reference to Tackman's September 2013 "failure to thrive" diagnosis likely had minimal effect compared to the probative force of the record as a whole. Even assuming Tackman was competent to sign the August 2013 power of attorney in favor of Bassett, the State produced sufficient evidence for the jury to conclude beyond a

9

reasonable doubt that Tackman was a "vulnerable" adult whom Neaderhiser exploited during the relevant timeframe.

## IV.
## CONCLUSION

The district court abused its discretion by admitting Exhibit 3 without addressing Neaderhiser's hearsay objection to a portion of that document. Regardless, we hold that this error was harmless, and we affirm the judgment of conviction.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.